The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the Ninth Circuit. Before we begin, I wanted to welcome Judge Kazi Zada from Afghanistan. Are you here in the audience? Welcome. Thank you for being here. And we are all pleased that you're able to be in the United States after what's happening in Afghanistan. And I wanted to, I think all of us wanted to thank you for your service on behalf of justice. Thank you. We have a number of cases submitted on the brief, so I'll go ahead and submit them now. Garcia v. Beck, DiMartini v. DiMartini. And that's it. So those cases will be submitted on the brief, and they are submitted as of this day. The first case for argument is Sharp v. S&S Activewear, L.L.C. Good morning, Your Honors. Mark Mossard on behalf of the appellants. I'll jump right in, Your Honors, because obviously I have a limited amount of time. If you get into the nitty-gritty on this case, instead of the macro principles, the order simply doesn't track the complaint. You've got objective criteria. You've got subjective. You've got the gender-specific pejorative terms. You've got the blatant misogyny in the songs. You have that one song, Stand, where a woman gets shoved into the trunk and is driven off a bridge. And you've got directly articulated in the complaint also is the fact that Mr. Baker was offended in a different way than the seven women were. He was offended by the way male sexuality was portrayed. The women were offended based on the misogyny, on the graphic sexuality. This is all in the complaint. And the order assumes, implicitly assumes, without any factual basis in derogation of Rule 12, it assumes that there's some monolithic stimulus that offended men and women in an identical manner. That's nonsense. Even if it wasn't true. Counsel, question. If you were given an opportunity to amend the complaint, could you drop your male plaintiff and then none of these issues would exist anymore? No. I have a fiduciary obligation to Mr. Baker. I wouldn't drop him. I think he has a righteous case. I've met with him. He's a decent guy. He's a Christian man. And he has a view. He's not that guy. He's not a sexual predator. He finds the rap music very offensive because of the way he as a man is portrayed. He has a righteous case under Title VII. I wouldn't drop him. So if, you know, the district court says they ruled out the possibility that it can offend both male and female, and therefore it's almost sex neutral, therefore you don't have discrimination because of. What is your response to that? My first response would be statutory construction. The Congress intended to eliminate discrimination based on disparate impact, based on a practice, requiring the women in the office to be able to bench press 250 pounds. That's one of the purposes. Another purpose is to prevent workplaces from being permeated with sexual hostility. And what the court did in this, I mean, with all due respect, it's muddled thinking. The court transposed the disparate impact analysis onto a hostile work environment analysis. You can have, you can envision any number of scenarios. I mean, something ridiculous where the owner, 100 women, 100 men, puts up big screen TVs and plays bestiality movies about the most foul stuff you can imagine. Offends everybody. Under this rationale, even though you have a workplace completely permeated with incredibly foul sexuality, there is no Title VII cause of action. Because implicit in that is the very rationale that was rejected in Steiner again and again. The offense taken by a man does not somehow magically cure offense taken by women. 25% of girls, by the time they reach 18, have been molested. So if you have a group of women, mean average age 40, you're talking 40, 50% of those women have been sexually molested or raped. And you're going to play this nonsense in the workplace? No, in other words, you reject this notion that seems to at least be implicit in S&S's brief that, well, if you have an equal opportunity offender, then what's the beef, right? Well, this court has also rejected it. But I think what, you know, one of the things you look at, the phraseology because of sex, it's the same way every act is determined by the context in which it's done, that every sentence, every word I say here today is determined by the context in which I say it. And so I don't think that that language, that because of sex, it's interchangeable. If you look at the 1991 amendment, if you look at a lot of the cases, it's used interchangeably with on the basis of sex. It was never intended to provide an out because in proof of the puddings and the tasting, at the end of the day, you end up with an absolutely absurd result and an absolutely absurd affirmative defense. You can have the very conduct that Congress intended to prevent and remedy, just foul, nasty sexuality, and if the defendant can find one man who says, I was offended, the statute's out the window, and the law's a laughingstock, and you end up with this. Think about it. The employers are actually encouraged to go all out. If you have a recidivist employer who thinks it's okay to engage in this nonsense, they are encouraged to go all out. Don't just have fold-outs of Playboy on the wall. Have fold-outs of Hustler, obscene. Because then you can't Could you describe what the male plaintiff's allegations are, how he was discriminated based off of sex? He was subjected to sexual harassment, which is a form of discrimination because I'm sorry. Sexual what? Sexual harassment. How? Because he was constantly regaled all day long with these songs that glorify rape, that glorify the oppression of women, that talk about stuffing a woman in her trunk. Is there any evidence that he was harassed in any way by people personally? No. By his co-workers? No. The women. There's no evidence that Mr. Baker was harassed in that way. The women. And one of the problems with this, allowing this music to be played, is it implicitly repudiates the policy, which is the basis for the affirmative defense. The message then on a daily basis is anything goes, and it did in this environment. Is there any case that suggests that just being subjected to a song is a basis for sexual harassment, and that's it? It's not a song, Judge. It's a repertoire of songs all day long, blasted out at full volume. There's a video in this case. This got dismissed. We were at the settlement conference, and the opposing counsel was saying, I've been in their warehouse. You can't hear anything. And one of my clients goes, well, I have a video. And the video depicts this. You can hear it clears a bell. She comes up on it. It's over the speaker with 18 inches high with pulsating lights. It's not a song. It's constant repertoire all day long. Okay. Well, even in that, is there any case that suggests a similar fact pattern of just being subjected to all-day music is a sexual harassment? I could not find a case directly on point, but it's music is part of the environment. These cases are about sexually hostile work environment. I think with the women plaintiff, that does make sense. That's in addition to other actions. But for the male plaintiff, it seems like it's just the music. Yes. And he was also offended. Some of the women, the evidence, if we've been allowed to deduce the evidence, the evidence would have showed that Mr. Baker was approached by a number of women who asked him to protect them, but he didn't have the authority. So, I mean, even though there's not a case in the Ninth Circuit involving music, is there really any logical difference between music that blasts out this message and some person walking around the factory floor or the work floor saying exactly the same thing? Right. There's no qualitative difference between auditory obscenity and visual obscenity. I just deposed a fellow, a PMK for a school district, and he was trying to justify the music because they're letting kids play this. And I asked him, I said, what would you do if you're inspecting the school, I'm over here in a partition, and you stick your head around the corner, see what work I'm doing, and I have a Hustler magazine and it's spread out. He goes, I'd take it away and send you to the discipline. I asked him, okay, tell me the difference between auditory obscenity and visual obscenity. And he couldn't answer the question because it's just a difference of venue, how those images are portrayed, whether they're created in your head off the words that you hear or whether you actually see a picture. There's no difference. These cases are about environment. There's nothing special about music that takes it out of the standard analysis, frequency, duration, and severity. The standard analysis this court has used for 30, 40, 50 years. And it's the same analysis. And so once you apply that analysis, then you look at the content of the songs, how loudly were they played, how frequently were they played, over what duration did a particular plaintiff hear them. There's no reason to deviate from that analysis. Do you want to reserve some time for rebuttal? My counsel is going to. I'll reserve a minute for 53 seconds. Thank you, Your Honor. Good morning. Enoel Acalino for the EEOC. It's amicus. And I'd like to just follow up on some of the questions that you had of counsel. First, Judge Bumate, I think that your question was, would dropping the male plaintiff from the complaint solve the plaintiff's problem as to the seven female plaintiffs? And I think that answer is no. We need you to correct the district court's error because the district court reasoned that because everybody was exposed to this conduct and everybody was offended, that nobody has a claim. So I don't think that that would solve the problem. There were questions about, well, how could this be a hostile work environment if both men and women were offended? And I think that the fact that some men took offense from the music would not defeat the woman's claims. The courts have recognized, for instance, in Oakletree, which is a Fourth Circuit en banc case, which I just want to note the defendant has miscited and relied on the dissent there. But the en banc court in Oakletree upheld the jury's verdict in favor of the female plaintiff there and said that the fact that some of the men also found the conduct offensive did not destroy her claim. So we think that that is not a basis to affirm the district court's ruling. But you think that Mr. Baker has his own freestanding independent claim? Yes, we do. Could he have brought this suit by himself? He could have brought the suit by himself, and we would still argue that the complaint had been prematurely dismissed. The standard for a motion to dismiss, as you know, is quite low. It's not a probability standard. It's just a plausibility standard. The allegations as to Mr. Baker, I think we concede in our brief, are less robust than the woman. But what he alleges was that the songs offended him as a man because of their portrayal of the relationship between men and women. And reading the complaint in the light most favorable to him and taking all the inferences, these are songs that depicted men as rapists, pimps, and murderers. And that potentially is enough for him to have his own hostile work environment case. And this court— Are there any other cases that say that, that just pure music, being exposed to music, is sexual harassment? Your Honor, I also could not find a case that was just based on music. But music, I agree with Judge McEwen. The fact that these words were said or the song lyrics came across from the speakers instead of employees in the workplace saying these words shouldn't change the analysis. So if you had employees— Well, doesn't it go to severity? I mean, I think if you're projected, if you're exposed to visually sexually explicit material, that's very different in kind than just hearing background music. I would respectfully disagree with that principle. But just as a starting point, we're not here on severity and pervasiveness. We're here on because of sex. So I think that that does make a difference. So the fact that these words, as to the women, and they're so offensive, I'll just say them one time, but bitch, cunt, whore, and hoe, those are deeply offensive words, whether they come at a woman through the speakers that are being played in the warehouse or they come out of the mouths of her co-workers. But just to follow up, there is one case that does talk about what happens on the radio, and that's the Reeves case, the en banc 11 circuit decision, which my friend on the other side doesn't even try to distinguish the Reeves case. And there, there was a morning radio show which had crude and vulgar conduct where the court said it didn't really give too much credence to. But the descriptions of women's bodies that were on the morning radio show was something that came into consideration, talking about women's nipples and body parts. So I think you do have some precedent for that. So if I could just say the equal opportunity or harasser defense, which I think is just a different way of saying everybody was offended. You have rejected that for a long time in the Steiner case, which was about the female who was working in the casino. This court said the fact that some men were also harassed would not defeat her claim. And in fact, you said there that you couldn't rule out the possibility that the man would have his own hostile work environment claim based on sex. And that's also consistent with this court's rulings in race cases where this court has said there's no escape hatch for the fact that some harassment has been directed at white employees. That doesn't negate or erase the claim of an African-American employee. And in the case EEOC v. National Education Association, Alaska, that we cited in our brief, there that was a case involving three female plaintiffs who were harassed, but there was also some evidence of harassment of a man. And this court recognized quite rightly that that did not erase or negate the claims of the female plaintiffs there. And also, just to point out that this court has recognized the subjective experiences of individuals matter in the workplace. So men and women might be witness to the same kind of conduct but have a different subjective experience. That was actually recognized in a case that the defendant cited, Simmons v. Safeway, which involved staring. So the court recognized there, this court recognized, that women might experience staring differently than the man there. There was a man who said, I appreciated the staring, and the woman said it made them feel deeply uncomfortable. A similar notion runs through your decision in the EEOC Alaska, National Education Alaska case, where this court recognized that women might have a different perception of conduct of a man in the workplace because of their different lived experiences. And that actually started in this court's decision, Ellison v. Brady, which recognized that a hostile work environment has to be looked at through the lens of a reasonable woman in that position. And because women are more vulnerable to rape and sexual violence, things can affect them differently. And I think here, clearly, as to the woman, these sex derogatory words had an impact based on sex of altering their terms and conditions of employment. Thank you. Thank you, counsel. Mr. Cooper. Good morning, Your Honor. It's Robert Cooper on behalf of Appalachia SNS. The only element in dispute in this case relates to the Title VII, Section 703A's requirement that the discrimination be because of sex. Although counsel referred to the issues pertaining to the frequency, duration, or the severity of the hostility or the abusive environment, none of those really matter here because the second prong, the second element with regards to the requirement to have a severe or pervasive harassment, that's not the issue here. So going back to the element at issue, which is whether the conduct was discriminatory because of sex, the test that the court is guided by is the Bostock test by the U.S. Supreme Court that was decided three years ago. In that case, the majority opinion by Justice Gorsuch held that the test is, and this is a quote, if changing the employee's sex would have yielded a different choice by the employer, statutory violation has occurred. That's page 140, SCT 1741. So the question then becomes, if we were to change the sex of the plaintiffs in this case, and they have alleged crimes by both sexes, so we'll begin with the male plaintiff. If this was a female plaintiff, if Mr. Baker were a female plaintiff, would the conduct of the employer have changed? According to the allegations of the complaint, the answer is no because it was identical conduct that was targeting both men and women. Counsel, I don't see where this is going to get you. If you're right that because there was sort of an equal opportunity harasser, had the plaintiffs not brought Mr. Baker into the suit, you'd be calling Mr. Baker as an expert witness. You'd be calling him as a witness to say, I was offended and that would be a defense to this. And that just seems, that just strikes me as absurd. Well, again, you've got to go back to the text of the statute. The statute by itself, Title VII, Section 703A, does not prescribe harassment alone. And there's a quote by the Reeves case that counsel referred to, the court held, Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, which includes harassment. So this particular remedy, statutory remedy, is not the proper remedy for this sort of allegations. There are state law remedies. So you're saying there's no federal remedy for hostile work environment that impacts someone because of sex? In the absence of an allegation that the conduct is discriminatory because of sex, the answer is no. You seem to want to turn this into a disparate impact case, and it's not. It's being brought under a different prong. That's correct. It is not alleged as a disparate impact case. It's a disparate treatment case, as it's been alleged. But going back to Your Honor's question, in Holman v. Indiana, Seventh Circuit case, it has a good quote that summarizes our position. The court held it is not anomalous for a Title VII remedy to be precluded where both sexes are treated badly. If anything, it would be anomalous not to require proof of disparate treatment for claims of sex discrimination because, again, discrimination by definition entails differential treatment, and the allegation here is that both sexes were treated equally. But haven't we said in a similar context in the race context that this so-called, well, I'm an equal opportunity discriminator just doesn't fly? We've said that in Swinton and in other cases. In Swinton, the 2001 decision, by Your Honor, that was easily distinguishable because there the plaintiff was the only African-American worker employee among 140 employees. So then it's obvious that if you're the only person in a particular race or group or member of a particular ethnicity and you're the only one who's being targeted among 140 individuals, then by definition there is discrimination because you're being targeted. If we took Mr. Baker out of the lawsuit, just for theory, does this survive a motion to dismiss? Then there would be no allegation. The only allegation would then be that there's discrimination against women. They would have to show or at least allege at the pleading stage.  It could, depending on the allegations. We have the allegations. We know what the allegations are here. Does this complaint survive a motion to dismiss if Mr. Baker is out of the suit? If it's because of sex, yes, it would survive a plea. I'm asking you, is this complaint because, is S&S conceding that this is because of sex? With respect to the woman? Yes. The allegations assuming, they have all sorts of allegations in there. We're talking about the ones that are the allegations. You just take them all holistically. I'm just asking, if we were to sort of cover Mr. Baker's name on the complaint, should Judge Du have dismissed this case? Well, that brings up a separate issue that has not been briefed in this case, which we could not brief, frankly, because the law is against us and at some point there's a circuit split that the Supreme Court would need to address, but that would be a secondary issue that we would get into, whether the allegations trigger Title VII based on the dispute, the circuit split as to whether terms and conditions refer to ultimate employment decisions or whether it also covers something short of ultimate employment decisions. Counsel, I've asked the question I think three times now, and I haven't heard you tell me no, that this complaint could not survive a motion to dismiss. Setting that circuit split aside, yes, it would survive. If the allegations, at the pleading stage, it would survive if the allegations are specifically limited to women and it's alleged that because of them being women, they were being targeted based on this offensive music. Going back to some of the cases that counsel cited. Let me ask you a variation on Judge Wybie's question. As I hear your answer, if we were to excise the male plaintiff, there would be enough here for this to go forward as to the females. Subject to that circuit split, yes. Then we would have to see what is the evidence. There would be a summary judgment and maybe a trial, but maybe not. Okay. So if there turns out evidence for lies that the music, certain music, is offensive to the male but might not be offensive to the female. So he says I'm discriminated because of sex being a male because of this particular kind of music. That puts me, the male, in a hostile environment. Why could that not coexist with the female's claim once you have some evidence to sort out what is what? Because the underlying problem is still the same. The effect is the same. The allegation there would be the male plaintiff saying I'm offended by lyrics numbers one, two, three, and the female plaintiffs are offended by lyrics four, five, and six, but they're both saying the same thing. It doesn't matter which particular lyric you're offended by. The effect is the same. Why? If they're playing Kumbaya or the Bach's Partita, and you say, well, are you offended by that? Well, no, that actually doesn't offend me when they play that during lunch. What offends me are these songs. So why, I mean, you've got to look at the evidence. Why couldn't it be that songs A, B, C, and D played continuously in the workplace are offensive to women, and the male says, I'll tell you what offends me, and I think it's discrimination because of sex, hostile work environment, or E, D, E, and F. Why can't those coexist? Going back to the Bostic test, then the question becomes, would the conduct of the employer have changed if we changed the plaintiff's sex? If the answer is yes, then there would be a statutory violation. Okay, but we don't know the answer to that. We're at a motion to dismiss, but it could be yes, right? If the answer is yes, then there would be a statutory violation if changing the conduct of the employer would have changed. Let me ask it a different way. So you concede that if the women just brought their suit, that they should survive the motion to dismiss. What if Mr. Baker alone brought his suit? He would have to show that he was discriminated because of sex. In other words, he was being targeted. They were trying to invoke or provoke his reaction as a man. I know. Right. So does he survive based off the allegations he's presented? There is no such allegation right now. He would need to amend to say that Mr. Baker was targeted to provoke his reaction as a man specifically. And that goes back to the Oakle Street case that counsel referred to. There, on Monk Fourth Circuit decision in 2003, you had a fact pattern where the plaintiff was the only woman and the conduct was intended to provoke her reaction as a woman. So she was the individual target of the conduct. So there you have discrimination because of sex, where she's being specifically targeted to provoke her reaction. So I guess your answer is that he would not have a claim. He should not survive motion to dismiss. Unless he can amend to show that the music was targeting him in order to provoke his reaction as a man. That was another issue, I guess, in the district court opinion, the targeting. Is that settled that it has to be targeted? When I say targeted, there's no requirement that you specifically target per se, but you do have to show that you were trying to provoke the person if you want to show discrimination because of sex. That's what the case has said. Going back to Oakle Tree, there they were trying to provoke the woman's reaction. I thought just under a hostile work environment, it just has to be a sexually abusive conduct. That's the minimum, yeah. Going back to the discrimination element, there are cases that have said you do not specifically need to target the person, but if you want to get around the requirement for discrimination because of sex, I think you do need to show that you were trying to provoke the person's reaction. That's not necessarily the same as targeting. You think that in order to prevail in a Title VII case, that the plaintiff would need to show, your music, Mr. Employer, targeted me, and then the other plaintiff would have to say, well, no, it targeted me. No, it's not that extreme. Okay, well, so what then is the legal principle you're trying to urge us to take a look at? Well, Judge Beaumont was asking whether for Mr. Baker himself, what sort of allegation he would need to bring, and that goes back to the Second Circuit case we cited involving pornography, where the court held that although both men and women were shown the pornography, or there was only a female plaintiff there, the conduct of the defendant was designed to provoke the secretary's reaction. The female plaintiff was a secretary for a professor. It was intended to provoke her reaction to the porn. I wouldn't call it targeting. I know it's a fine line, but if it's intended to target, then you are discriminating because you're going after somebody to get the reaction, and that goes back to the element of discrimination because of sex. You're engaging in discriminatory conduct, which by definition entails some sort of differential treatment. And wouldn't that kind of intent be a factual issue, if that were a floor for purposes of bringing forth a claim? It can be, sure. Going back to another case that counsel referred to, Reeves, that is distinguishable. That's an en banc 11th Circuit decision, and the reason it's distinguishable is because in that case, the court held on page 813, Reeves claims that her conditions of employment were humiliating and degrading in a way that the conditions of her male co-workers' employment were not. So, again, you have an allegation of discrimination because the conduct towards the female plaintiff was different than the conduct towards the male plaintiff. So you do meet the threshold element of having discriminatory conduct, which again, by definition, refers to differentiation between the two sexes. Do you have any cases that are closer analog to this one, where you've got a group of female plaintiffs and an individual or group of male plaintiffs, and then the court analyzes it along the lines that you're suggesting? Do we have it? What's the closest case? The closest case that I found, I thought, was Holman v. Indiana, the 7th Circuit decision that was issued in 2000. You had the same person, same supervisor, harassing both the man and the woman. It was a husband and wife couple, so he was harassing them both, and the court adopted our position that he was an equal opportunity harasser, for lack of a better term, and therefore this particular remedy was not available. And again, it doesn't mean that the plaintiff is completely out of court. To the extent there's gaps, state law remedies will fill those gaps. In this particular case, though, no Nevada law cause of action has been presented. But typically, in California at least, there's a ton of remedies under state law, common law remedies, non-statutory remedies, including torts of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress. None of those has been alleged here, but to the extent there are gaps, Title VII is not the proper remedy. State law is. Unless the court has any other questions. Thank you, Your Honors. Thank you, Counsel. Your Honors, there is no intent requirement in the hostile working environment case. They could come in to—managers who are allowing this to be played could come in and say, We're sorry we offended anybody. We didn't know we were offending anybody. We just liked the music. It doesn't matter. There's no provocation requirement. There's no intent. You look at this from the perspective of the victims, and you look at it from the perspective of women, if the women are involved. But Title VII does say discrimination based off of sex. So if you're playing music and you're not targeting sex, it does seem to suggest that there is some element of intent there. No, there isn't. Sexual harassment is a form of discrimination. Well, sexual harassment is, but playing music, for example, for another reason that happens to offend someone. That's sexual harassment. And what counsel is doing is the same thing the court did. Counsel is muddling the concepts, the proof that's necessary to establish the disparate impact case or the hostile work environment case. They're mixing apples and oranges. There is no intent requirement. There's no provocation requirement. Think about what— For a hostile work environment, there's no intent that the abuse of conduct be based off of sex? Right. How is that consistent with the statute? You look at the objective, hypothetical, reasonable woman, would she be offended? Look at the individual. Was she subjectively offended? Yes and yes. Did the employer know about it and permit it? Yes. And to hunt. That's it. Think about what would happen here. If we proceed on this judge's news theory, if this case proceeded—even though we didn't have Mr. Baker in this case, the defendant could produce him or somebody else as a witness and say, I was offended. All federal remedies are off the table. We shouldn't be in federal court. We should be in state court. My clients weren't touched. They have no remedy. In a work environment permeated with hostile sexuality on a daily basis, there's music blasting out of incredible obscenity. They have no remedy. Judges, this decision has—this order has to go. Otherwise, I'm out of business. Thank you, counsel. This case is submitted.
judges: McKEOWN, BYBEE, BUMATAY